## EDGAR NORTON V. THE STATE.

No. 22964. Delivered January 3, 1945.
Rehearing Denied April 11, 1945.

The opinion states the case.

*W. T. Perkins,* of Quannah, and *C. C. McDonald,* of Wichita Falls, for appellant.

*R. R. Donaghey,* District Attorney, of Vernon, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

Appeal from conviction for the theft of one calf; penalty, is confinement in the State penitentiary for a term of two years.

Appellant challenges the sufficiency of the evidence to sustain his conviction. A careful consideration thereof leads us to an adverse conclusion. The evidence adduced by the State, briefly stated, shows that on or about the 17th or 18th day of September, 1943, Don Drake noticed that one of his Hereford cows, bearing a circle brand on her hip, was in appellant's pasture, but that her calf was not with her. He reported the matter to the officers who began an investigation thereof. They learned that on the 16th day of said month, appellant had sold forty head of cattle through the auction ring at Vernon, Texas, including an unbranded and unmarked Hereford bull calf. They also learned that this bull calf, together with two heifers, had been sold to Les Hammond. They went to Hammond's place, found the bull calf, brought it back and put it in the corral with two cows, one of which was the Hereford cow bearing the circle brand; that as soon as the calf was placed in the corral it went to sucking the cow and she began licking the calf. Mr. Drake identified the calf as belonging to him.

The evidence further shows that after the cattle were placed in the pen at the auction ring which had been assigned to appellant, he made a list which is referred to by witnesses as the "income sheet." This sheet showed the number of cows and calves, the sex, as well as the mark and brand on each animal, together with the number that was placed on each one. The registered animals were numbered with blue chalk while the unregistered ones had a pasteboard card with a number thereon pasted on the hip. This sheet disclosed the fact that appellant had brought an unmarked and unbranded white-faced bull calf to the ring. The sales record showed that a white-faced bull calf with a pasteboard card bearing No. 57 glued on its hip, was sold to Les Hammond, and when the officers found it, it still had the pasteboard tag bearing No. 57 on its hip.

Appellant, who testified in his own behalf, admitted that he

carried a Hereford bull calf to the auction ring but claimed that it was marked with a swallow fork in the right ear; that subsequently two bull calves which he had sold came back to his premises; that he called the sheriff to come out and he would find that each of them was marked in the right ear. The sheriff responded to the appellant's request, but upon inspection told appellant that neither of them was the calf which he and the Rangers had recovered at Les Hammond's place; that the calf which they brought back from Hammond's premises did not have any mark or brand on it and differed in size and weight from those which appellant had shown him.

Appellant further testified that the white-faced bull calf which he sold through the auction ring on the day in question had No. 80 tatooed in its left ear and marked in the right ear with a swallow fork; that in the early part of October this calf came back to his pasture. Appellant admitted, however, that although he had, on the day in question, sold this particular animal which returned to his pasture, yet, at a subsequent day, he sold it again. This, in our opinion, was a circumstance which rebutted his contention that it was the white-faced bull calf which he had sold on the 16th day of September. If he had really sold this calf instead of the one in question, he knew that it did not at that time belong to him and that he had no legal right to sell it; that if he did so, it would most likely get him into trouble, but if it was not the calf which he had sold through the auction ring on September 16th, then he had no cause to fear or apprehend any trouble. This is a very significant fact and no doubt contributed as much as any other fact or circumstance to his conviction.

The record reflects that upon his trial appellant was represented by able counsel who, on appeal, presented to this court a most ingenuous argument upon the question of the insufficiency of the evidence, but we are not convinced that the evidence is insufficient to sustain the conviction.

Appellant addressed quite a number of objections to the court's charge and requested several special charges. The court declined to respond to the objections or to give the special requested charges, and of this he complains. We have carefully examined the court's charge in the light of the objections and reached the conclusion that the charge fully and adequately embraced the law applicable to the facts. There was not any evidence raising the issue of mistake. Appellant did not even claim that he took the animal believing that it belonged to him;

nor is there any evidence from any other source which even faintly raised that issue. Therefore, a charge submitting that issue was not required. His contention was that the animal which the officers found at Les Hammond's place was not the animal he sold on the day in question but a different one which later came back to his pasture.

By Bill of Exception No. 6 appellant complains because the court, over his timely objection, permitted the State to reproduce the testimony given by Mrs. Betty Kent on a former trial of this case. Appellant's objection thereto is based on the ground that a proper predicate had not been laid; nor was it shown that the witness was dead or had permanently left the state. As a predicate for the reproduction of the testimony, the State proved by Mrs. Jack Hammond that she was the mother of Mrs. Betty Lee Kent; that in September, 1943, Betty Lee Kent worked at the auction ring at Vernon, Texas, but that she was now in Muroc, California, where she had obtained employment and had resided for a period of six weeks. Upon the foregoing evidence, the court permitted the State to reproduce her testimony, and we think properly so. See Finley v. State, 92 Tex. Cr. R. 543; Conn v. State, 158 S. W. (2d) 503, 143 Tex. Cr. R. 367; Brent v. State, 89 Tex. Cr. R. 544. In the latter case, this court, speaking through Judge Lattimore, said: "We do not think the expression in the opinion in Anderson v. State, 74 Texas Crim. Rep. 621, 170 S. W. Rep. 142, to the effect that it is only when a person is permanently gone beyond the jurisdiction of the court that such evidence can be reproduced, was intended to convey the idea that such witness must be shown to never intend to come again into the jurisdiction of the forum. The reason of the rule admitting such testimony rests in the necessity of the case, and if it appear that the removal of the witness is what is ordinarily referred to as temporary; for instance, where one whose home is in Texas has gone on a journey which may occasion the present absence of said witness, and which will in due course of events be ended by the return of such witness, the predicate would not appear to be sufficient; but when residence is shown as outside of the state, and the return of the jurisdiction is indefinite, no reason would appear for the refusal of the evidence."

This appears to us as a sound doctrine based on sound reasoning.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant presented an argument to us relative to the insufficiency of the facts, and earnestly contends that same do not show appellant's guilt beyong a reasonable doubt.

The "come-in" sheet rather than the "income" sheet shows that appellant himself made out the same and it reflects a certain calf as the property of appellant, and on his hip was pasted the number 57. This calf was sold to Mr. Hammond, and later brought into a pen with a circle brand cow belonging to Mr. Drake. This 57 marked calf sucked this circle brand cow and she licked the calf, and appellant, when asked about the calf and the cow, said he thought the cow seemed to be the mother of the calf. If such a relationship existed between this 57 calf and the circle brand cow, then the calf was Mr. Drake's and appellant had no claim on the calf, nor right to sell the same. He was charged with the theft of this calf.

There is much testimony herein on both propositions, relative not only to appellant's guilt but also to his innocence, and to a certain extent they both cannot be true, but there is sufficient testimony presented by the State, if believed by the jury, upon which a verdict of guilt could be predicated. They have seen fit to believe the same, and after a careful consideration of the facts, we do not feel authorized to disturb the jury's finding. These facts have been reviewed by each member of the court, and believing that the testimony is sufficient, this motion will be overruled.