## L. C. CONN v. THE STATE.

No. 21799. Delivered December 3, 1941.
Rehearing Denied February 18, 1942.

The opinion states the case.

BEAUCHAMP, Judge (Dissenting).

*J. R. Bogard,* of San Augustine, *J. R. Anderson,* of Center, and *Rio Blake,* of Jasper, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for a term of thirty years.

This is the second appeal of this case. The opinion delivered by this court on the first appeal is reported in 140 Tex. Cr. R. 202; 143 S. W. (2d) 1036.

The evidence in this case is not materially different from that adduced upon the former trial. It was the theory of the State, finding support in the evidence, that the appellant, with malice aforethought, killed Rufus Johnson. The defendant's theory was that he shot and killed the deceased in self-defense. A more detailed statement of the facts is deemed unnecessary in making the proper disposition of the questions presented by this appeal.

The first question presented by the record relates to the court's action in changing the venue of the case from San Augustine County (the county in which the offense was committed) to Jasper County, which is adjacent to said county. It appears from the record that the first trial, which resulted in the appellant's conviction, was had in San Augustine County,

but that after the judgment of conviction was reversed and the cause remanded for another trial, appellant filed a verified motion for a change of venue in which he set up the statutory grounds. The State filed controverting affidavits and claimed that the same conditions existed in Sabine and Shelby Counties which existed in San Augustine County; that on the trial of this case in the latter county, many people from Sabine and Shelby Counties attended the trial, which continued in progress for four or five days; that newspapers, which were circulated in the last-named counties carried extensive reports of the trial of the case. The court heard evidence relative to the matter and at the close thereof decided that a fair and impartial trial both alike to the defendant and the State could not be obtained in either Sabine or Shelby County and changed the venue to Jasper County. It seems from the evidence that the court houses of Sabine and Shelby Counties are just a little nearer to the court house of San Augustine County than that of Jasper County, but the road from San Augustine to the latter place is better than to the court houses of Sabine and Shelby Counties. However, all of the counties mentioned are in the same judicial district. Of course, under the statute, Art. 565, Vernon's Ann. C. C. P., if the same conditions had not existed in Sabine and Shelby Counties that existed in San Augustine County, the court would have been required, upon the granting of the appellant's motion, to have changed the venue to Sabine County, as the court house of that county is nearest to the court house of San Augustine County. The court decided the question adversely to the appellant's contention and, in our opinion, the evidence is sufficient to sustain the court's conclusion. This court would not be authorized to disturb his judgment unless it is made to appear that the court had abused or arbitrarily exercised his judicial discretion. See Branch's Ann. Tex. P. C., Sec. 299, and authorities there cited.

Appellant next complains of the introduction in evidence by the State, on the motion for a change of venue, of certain affidavits. It seems that on a motion for a change of venue such affidavits are admissible under the authority of Labbaite v. State, 6 Tex. Cr. R. 257. Appellant also objected to the asking of some leading questions. These matters were before the court in the absence of the jury and in passing upon them, the presumption prevails that the court considered only such evidence as was legally admissible.

In the case of Mondragon v. State, 33 Tex. 480, (483), Judge Lindsay, speaking for the Supreme Court, said:

"When the change was made to Comal county, the defendant offered to prove that the court house of Medina County was nearer to the court house of Bexar County than that of Comal. But the court was *otherwise* satisfied, (in what manner, this court think, is not material, unless it should appear from the record that the cause of the defendant was thereby actually and positively prejudiced) that there was 'some valid objection' to the county of Medina."

By Bills of Exception Nos. 1 to 9, both inclusive, appellant complains of the reproduction of the testimony given by John Horton, Jr., at a former trial of this case and its introduction in evidence upon this trial. Appellant objected to its introduction upon the ground that a proper predicate had not been laid as a basis therefor. We are not in accord with his contention. It was shown by John Horton, Sr., that his son (John Horton, Jr.) lived with him up to the month of October or November, 1940; that John Horton, Jr., was commonly called "Son"; that since the first trial of this case, John Horton, Jr., had moved to San Diego, California. We quote from the testimony of John Horton, Sr., as follows:

"I know John Horton, Jr., is in California, because I get letters from him all the time. Those letters are postmarked 'San Diego, California.' This is one of the letters my wife and I received from John Horton, Jr., and his wife. The postmark on that letter is 'San Diego, California.' I had a letter from John Horton, Jr., last Saturday a week ago; it was postmarked the same place. I read *this letter here;* that is a letter I received from my son, John Horton, Jr., and his wife from San Diego, California, dated January 13, 1940. (1941)"

The District Attorney testified that he received a letter purporting to have been written by John Horton, Jr., on January 4, 1941, at San Diego, California. Thereupon, John Horton, Sr., was recalled to the witness stand and testified that the letter, which reads in words and figures as follows, was in the handwriting of his son, John Horton, Jr.:

"San Diego, Calif.
"January 4, 1941.

"Mr. Joe J. Fisher,
"San Augustine, Tex.
"Dear Mr. Fisher:

"I received your letter and after consideration I decided it

would be foolish for me to come back there to be a witness in the L. C. Conn case. If I did so I would *loose* my job. Therefore I think it will be wise for me to not come."

"Sincerely yours,

"Son Horton."

It is our opinion that when it was shown that this letter was in the handwriting of the absent witness and that it was dated and postmarked "San Diego, California," a sufficient predicate was laid upon which the reproduced testimony could be introduced. This letter shows that John Horton, Jr., had received a letter from Joe J. Fisher to which he replied that he had decided it would be foolish for him to come back to be a witness in the L. C. Conn case; that if he did so, he would lose his job; that therefore it would be wise for him not to come. That the witness was in the State of California seems to be shown by the testimony. That he did not go there merely on a visit for a short period of time is to be inferred from the fact that he had a job which he desired to retain; that if he came back here he would probably lose it. This language fairly indicates that he had made his home in the State of California, had obtained employment and desired to remain there. In our opinion, the language is not subject to any other construction. When John Horton, Sr., testified: "This is one of the letters my wife and I received from John Horton, Jr., and his wife; the postmark on that letter is San Diego, California; I had a letter from John Horton, Jr., last Saturday a week ago; it was postmarked the same place," the witness evidently had the letter before him when he was testifying. The contents of the letter, perhaps, were not relevant and admissible, but the fact that he had received a letter from his son "last Saturday a week ago" and that it was postmarked "San Diego, California" was admissible.

Appellant has cited us to the case of Gamboa v. State, 69 Tex. Cr. R. 635; White v. State, 202 S. W. 737, and several others. We have examined each of these cases with great care and think they are all distinguishable from the instant case upon the facts. It is obvious that whether a witness had left the state and is beyond the jurisdiction of the court depends upon the facts and circumstances of each particular case.

Appellant in due time and manner urged a number of objections to the court's charge. His main contention seems to be that the court's charge limits and restricts his right of

self-defense. We have examined that paragraph of the charge against which his complaint is addressed and find it to be an abstract statement of the law. It might be deemed somewhat restrictive but when the court in his charge made application to the law of self-defense to the facts, he gave a very comprehensive and adequate instruction thereon. It is a settled rule in this State that in determining the sufficiency of a charge, this court is required to consider it as a whole and if, when so considered, it appears to fairly present the law applicable to the facts, it will be deemed sufficient. It follows from what we have said that we are of the opinion that the court's failure to respond to appellant's objection would not warrant a reversal of the judgment.

Appellant's next complaint relates to the court's failure to instruct the jury in effect that if the defendant was justified in firing the first shot, he was justified in continuing to fire so long as it reasonably appeared to him that his life or person was in danger at the hands of the deceased. Whether or not such an instruction is required depends upon the facts of the particular case. We do not think that the facts in this case call for a charge. Appellant testified in substance that deceased caught hold of his arm and that he told deceased to turn him loose, that he wanted to go home; that he made an effort to get loose but did not attempt to draw his gun at that time; that the gun slipped down the leg of his pants while they were tussling and fell to the ground; that both of them reached for the gun; that he (appellant) got it; that he picked it up with his left-hand and shot the deceased; that he started shooting as quick as he could get hold of the gun and that he shot the deceased four times; that he shot until he thought his life was out of danger; that as soon as deceased turned him loose he quit shooting; that he did not offer to shoot any more after he realized that deceased had turned him loose; that he did not walk up to the deceased's body and shoot him after he was on the ground.

John Horton, Jr., testified among other things, substantially as follows:

"I don't know in which hand Lott (meaning the appellant) had the gun when he shot. The first two shots were just one right after the other. After the second shot Rufus fell. Just as soon as he hit the ground the defendant walked up and shot him two more times."

There is no evidence that the parties had materially changed their positions from the time the first shot was fired until the firing of the last shot. The State's testimony shows that when the second shot was fired the deceased fell to the ground; that appellant shot him two more times. Appellant's testimony is that as soon as he picked up the gun he began to shoot and continued to do so until he realized that the deceased had turned him loose. These facts, in our opinion, do not call for the requested instruction. See Walker v. State, 98 Tex. Cr. R. 663.

Appellant's Bill of Exception No. 12 complains of the action of the trial court in failing to instruct the jury on the law governing one's right to defend a third person against an unlawful and violent attack. Appellant takes the position that since the evidence showed that the deceased had caught his wife by one arm and had hold of appellant's arm at the same time and told them that "this thing is coming to a close," required an instruction on the law justifying one in defending a third person against an unlawful and violent attack such as created in the mind of the party acting in defense of such third person an apprehension or fear of death or serious bodily injury to such third person. If the evidence in this case had raised that issue, the court no doubt would have instructed the jury on the law relative thereto. However, it is our opinion that the evidence does not call for such a charge. Deceased was not making an attack on his wife. It is true that he had her by the arm and when she tried to get away, he tore her dress on the shoulder; but no other hostile act or demonstration on the part of the deceased toward the wife was made which would indicate that the deceased was making an attack upon his wife which would reasonably create in the mind of the appellant an apprehension that deceased was about to inflict death or serious bodily injury upon her; nor did appellant claim to have shot in defense of deceased's wife. Therefore, that issue was not raised; hence, we overrule his contention. See Singleton v. State, 167 S. W. 46; 74 Tex. Cr. Rep. 71.

No error having been presented by the record before us, the judgment of the trial court is affirmed.

We agree to the foregoing opinion, and adopt the same as the majority opinion of the Court.

HAWKINS, Presiding Judge.
GRAVES, Judge.

BEAUCHAMP, Judge. (Dissenting.)

I find myself unable to agree to the affirmance of this case because I do not believe that the State has laid the proper predicate for introducing the testimony given by John Horton, Jr., on a former trial. The opinion says that John Horton, Sr., testified "that since the first trial of this case John Horton, Jr., had moved to San Diego, California." The witness did not make that direct statement, but the evidence which he did give is quoted, and I cannot agree that it can be construed to mean that he had "moved" to California or to any place. It only says that he is "in" California. I find nothing in the testimony of this or any other witness by which I can conclude that the State has proven the absence of the witness permanently or for any stated period of time. True, the letter introduced in evidence says that he had a job there, but the permanency of this job is not proven by the fact that he would lose it if he came here for the purpose of testifying. It rather indicates a lack of being established in that job.

The writer has heretofore expressed his views on the importance of this question in the case of Smith v. State, 152 S. W. (2d) 751, and attention is called to that opinion for a more elaborate discussion than is necessary to make here in order to properly record a dissent.

My associates do not agree that the case of Freeman v. State, 30 S. W. 330, is applicable to the facts of this case. I think it is because Judge Morrow in that opinion emphasizes the importance of showing the "permanent" absence beyond the state in the following language:

"This court, in interpreting the Constitution, has declared that though the witness be beyond the limits of the state, the statute does not authorize the reproduction of his testimony unless it be shown that he is *permanently beyond the limits of the state,* (italics his). By analogy, apparently a like interpretation should apply to the language of the statute with reference to age and bodily infirmity. In other words, age or bodily infirmity, which might delay, but not prevent the attendance of the witness, would not be such as to justify the reproduction of his testimony under the provisions of articles 749 and 750, C. C. P."

Likewise, absence from the state which might "delay, but not prevent the attendance of the witness" should not fulfill

the requirements. People go far these times for temporary jobs, and one which would be lost by a party attending court appears to be very temporary. Furthermore, it is the duty of the State to show some degree of permanency, and this it did not do.

I do not think the cases of Fisher v. State, and Finley v. State touch the question here involved. They would be authority in a measure and we could readily agree on the affirmance of this case if the State had proved the removal of the witness to the State of California by some evidence, circumstantial or otherwise, or that he intended to make it his home or to remain there for any indefinite period of time, indicating an unreasonable delay of the trial of the case. The record in the instant case is silent on the question of the time he intends to be away, and we are left to presume that it is sufficiently long to work an exception to one of the most important rules in our procedure and to release a valuable right guaranteed to us by constitutional provision. I am opposed to indulging this presumption in favor of either party. If such is the fact, or if there be circumstances to show permanent absence, the State had the witnesses present who could have testified· to it, and its failure to do so indicates to my mind an inability to make the proof.

The opinion states that reliance is had on Fisher v. State, 1 S. W. (2d) 318 and also Finley v. State, 92 Tex. Cr. R. 543. The Fisher case is authority for the proposition that the absence of a witness may be proven by circumstantial evidence. To this we agree, but we do believe that the evidence should lead unerringly to the conclusion that the party is permanently absent and not just merely that he is absent. It should exclude any other reasonable conclusion. The Finley case contains the statement, "as part of the evidence in the instant case letters bearing a California postmark and a statement by the absent witness written from California stating the impossibility of his being present and testifying in this case, and further proof of correspondence between parties in El Paso and the absent witness in California * * *." It will be noted that this quotation says that letters from California stated the impossibility of the witness being present, which is rather indefinite. Consequently, we have examined the original papers in this case and find that the record under consideration and which formed a basis for that statement, as revealed by the bill of exception bringing the case before this court, shows that the witness

"lives" in Los Angeles. The following excerpt from the bill of exception in that case indicates very clearly what the court meant, and is based on the fact that it was positively shown that the witness had moved his residence to Los Angeles:

"The testimony of the witness Frank Allen that he believed that the witness, Homer Long, was now residing in Los Angeles, in the State of California, and that he based his belief upon some statements in letters that had been received from the said Homer Long by his, Frank Allen's, mother to the effect that he had moved his residence to Los Angeles."

There is no such evidence in the case at bar. The opinion indulges a construction which we do not believe is justified. Examination of the record in the Finley case, upon which the opinion in this case is based, removes from consideration the only case which I have been able to find that will, to any degree, support the majority opinion on the one question upon which we differ. Furthermore, the Finley case relies upon the following authorities:

Anderson v. State, 170 S. W. 142, in which the court construed the language to mean that the witness had permanently removed;

Sanchez v. State, 153 S. W. 1133, where the testimony was to the effect that the witness was in a foreign country. A letter from him said that he was employed there. The court, because of the distance and surrounding circumstances, indulged the inference that his absence would be of sufficient length of time to classify it as permanent;

Millner v. State, 162 S. W. 348, in which the predicate was based upon a letter from the absent witness, also in a foreign country, in which the witness said he was still going to sea and was not coming back for a year. To another party the witness wrote that he could next be found in Hamburg, Germany.

None of the authorities relied on in the Finley case will support the majority opinion in the instant case.

The unusual history of the several instances in which this court has reversed its previous holdings on the question under consideration is almost without parallel. Few questions have engaged the attention and called for research by learned Judges to a greater extent than this. Judge Davidson main-

tained always that the admission of such testimony was contrary to the provisions of our Constitution herein referred to, and that even the death of a witness did not make his former testimony available. If it were a matter open to our construction, the writer might agree to this view, but we consider that question settled even before the formation of the Republic of Texas. The exact language in our Constitution is taken from that found in the Federal Constitution. Long prior to its appearance in the Constitution of the Republic of Texas the courts had so construed it as to make admissible testimony of deceased persons which had been given on former trials. We adopted it after such judicial constructions had been made and, consequently, are bound by them. However, I am unwilling to go further than the courts, State and Federal, have heretofore gone in admitting this class of evidence.

After a reading of the many authorities cited by both parties, together with leading cases and text books, I am in hearty accord with the conclusion of Judge Morrow as expressed in the Freeman case that one must be impressed with the conviction that the predicate for the reproduction of the testimony of an absent witness must reveal an impediment to the presence of the witness more cogent than a temporary illness or absence; that the right to have the jury who is trying a party observe the manner and way the testimony is given by the witness against him is too important to be lightly disregarded and to be set aside except upon the ground of necessity.

I think, too, that the guaranteed right of a party to have compulsory process would be seriously impinged by a departure from the rules heretofore established by this court, as I believe the majority opinion does do in this case. It is the universal experience of lawyers accustomed to the trial of cases that testimony will frequently be given by witnesses which, upon further investigation by the opposing party, may be proven to be false. When a lawyer, either side, has fear and doubt about the ability of his witness to withstand a cross-examination upon another trial of a case, it may become an easy matter for his witness to cross the border of the state, sometimes a distance of only a few miles, engage in a job of work and write home that he is not able to leave his present employment, and, without proof that he had moved other than that his wife was there also, without evidence that his household goods or his cattle had been either sold or removed, or that his housekeeping

equipment in the State of Texas had in any way been disrupted, and without proof that he intended to stay out of the state for any indefinite or stated period of time, to then reproduce his evidence on the trial of the case and have it read to the jury. This illustration would be in strict compliance with the majority opinion from which I dissent. It will open the gates and invite a predicate which this court cannot countenance and, to my mind, contribute materially to a situation, particularly along the border of the state, which my associates do not contemplate. No force is added to the majority opinion by reason of the fact that the witness had gone to a distant place, unless it be so distant as to indicate a longer period of time for his absence than here shown. It would be the same if he had crossed the Louisiana line only a few miles away.

While it is not practical to further elaborate on my reason for the view herein expressed, I think that what I have said will suffice to perpetuate my views of a right which I consider to be of vital importance as expressed by the constitutional provisions found in Art. 1, Sec. 10, and by the sixth amendment of the United States Constitution, guaranteeing to any party accused of crime the right to be confronted with the witness against him and to have compulsory process for obtaining witnesses in his favor except when that witness "RESIDES" out of the State.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In appellant's motion for rehearing he renews his complaint at the reproduction of the testimony of John Horton, Jr., given upon the former trial. It is appellant's contention that if the evidence presented by the State laying the predicate for such reproduction was improperly received, then such improper evidence should not have been considered by the trial court and that it should not be considered by this court in determining the sufficiency of the predicate.

It appears that this case had been set for a second trial in San Augustine County at the January term, 1941, but instead of a trial at such time the venue was changed to Jasper County. The letter from the absent witness to the District Attorney, Mr. Fisher, which is set out in our original opinion, we apprehend, was secured by the District Attorney to be used in seeking a reproduction of the witness' testimonly upon the

anticipated second trial in San Augustine County. When the case was tried in Jasper County in April, three months later, the letter in question with the envelope and postmarks thereon, was placed in evidence. We see no valid objection to this. It established that the witness was in San Diego, California, at the time the letter was written and mailed. At the time of the present trial the witness was still absent. We see no objection to the father of the witness testifying that he received letters from his son. This did not involve the contents of the letters but was the statement of a fact. Some of the letters mentioned by the father as bearing the postmark "San Diego" seem not to have been produced in court, and as to those letters the objection that the evidence as to the postmark was hearsay seems meritorious. However, some of the letters and envelopes were present at the trial and in the possession of the father while he was testifying. They appear to present a somewhat different picture. What the father testified to in regard to those letters present and the postmarks thereon is shown in our original opinion. Under the evidence before the trial court, we think no error is shown in permitting the reproduction of the absent witness' testimony.

Appellant again urges that the trial court should have given the instruction requested regarding his right to continue to shoot. We remain of the opinion that under the facts here present, such an instruction was not called for.

The motion for rehearing is overruled.