Richard J. BROOKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 52700.

Court of Criminal Appeals of Texas.

March 16, 1977.

Rehearing Denied April 13, 1977.

Marvin B. Zimmerman, San Antonio, for appellant.

Ted Butler, Dist. Atty., G. E. Wilcox, John William Harris, Jr., Susan D. Reed, Asst. Criminal Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for voluntary manslaughter; V.T.C.A. Penal Code, Sec. 19.04; the punishment, which is enhanced by a prior felony conviction, is imprisonment for 10 years.

In each of four grounds of error complaint is made concerning the court's instructions to the jury. The appellant asserts that the court erred in failing to respond to his timely objections to the court's charge or to his timely tendered specially requested instructions. The court refused to charge the jury on (1) the lesser included offense of involuntary manslaughter, (2) self-defense from apparent as well as actual danger, (3) defense of a third person, and (4) a presumption arising from the deceased's use of a deadly weapon.

A brief summary of the facts will be helpful in understanding the appellant's contentions. Since the appellant does not challenge the sufficiency of the evidence, and since all of the appellant's complaints are of the court's refusal to submit instructions to the jury, we will closely follow the appellant's version of the facts as stated in his brief and as supported by the record.

At approximately 3:00 a. m. on September 21, 1974, at the International Airport in San Antonio, Thomas L. Meredith was killed by a single gunshot while struggling with the appellant. Sometime prior to his death Meredith, his brother Ricky Lynn Meredith, and a friend, Gerald Barrett, were negotiating for the purchase of a quantity of marihuana. Richard Flores, the appellant's cousin, was a "middleman" in the transaction. Ernie Dominquez, from whom they were attempting to purchase the marihuana, took $2,400 of the purchasers' money and did not deliver any marihuana. Thomas Meredith, his brother, and their friend held Richard Flores responsible for the "rip off," and they were holding Flores prisoner until they received $2,400 for their loss in the marihuana venture. The appellant, who was in Florida, was told in a telephone conversation that if the $2,400 was not received by the Meredith brothers and Barrett they would kill Flores. The appellant, with the required ransom, flew from Florida to San Antonio; he arrived shortly before 3:00 a. m. on September 21, 1974.

The appellant was met at the airport by Ricky Meredith, Gary Barrett, and Richard Flores. They went to Barrett's automobile, then Thomas Meredith and the appellant went to an auto rental agency counter where the appellant rented an automobile. The appellant and Thomas Meredith left the terminal and walked toward the automobile occupied by Ricky Meredith, Barrett, and Flores. When they reached the automobile Thomas Meredith reached into the automobile and was handed a pistol. He turned toward the appellant, who began backing up; Thomas Meredith advanced toward the appellant and grabbed the appellant's suitcase; a struggle resulted. During the struggle Meredith was shot, and the appellant gained control of the pistol.

■ The appellant was charged with committing the offense of murder, but the jury found that he was guilty of the lesser included offense of voluntary manslaughter. The appellant argues that the court

erroneously refused to instruct the jury on the law of involuntary manslaughter. Since involuntary manslaughter requires a lesser culpable mental state on the part of the actor, it is by definition a lesser included offense of murder and of voluntary manslaughter. See Article 37.09, V.A.C.C.P. The appellant's counsel carefully preserved the alleged error for review. It is left for us to determine whether the evidence raises the issue of involuntary manslaughter so as to have required the submission to the jury the instruction sought.

■ A person commits the offense of involuntary manslaughter when he recklessly causes the death of an individual. V.T.C.A. Penal Code, Sec. 19.05(a)(1).

Recklessly is defined in V.T.C.A. Penal Code, Sec. 6.03(c) as follows:

"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all circumstances as viewed from the actor's standpoint."

■ The appellant directs our attention to his own testimony in the record which he says supports his request for the charge on involuntary manslaughter. The appellant fairly well summarizes his lengthy testimony and cross-examination in the following answers he made to three questions during his cross-examination:

"A. Okay, let me try to explain it. I wasn't pointing the pistol at Thomas Meredith. After the struggle, like I said, I was trying to defend myself. When I ended up with the pistol, the pistol was pointing at Mr. Meredith. But I did not point it at him. It was just after the struggle it ended up in my possession, and it was pointed towards Mr. Meredith.

\* \* \* \* \* \*

"A. I must be receiving it wrong, because it sounds like you're asking me as to whether I personally was pointing the pistol instead of asking me whether or not the pistol was pointed at Thomas Meredith. And I've answered yes, that it was, and yes, the gun was in my possession at that time. And no, sir, I did not point the gun at Tommy Meredith. After the struggle, the gun was in my possession and yes, the gun was pointed towards him.

\* \* \* \* \* \*

"A. Okay. Now, as far as the killing part, I didn't know that Mr. Meredith was dead at the time or that he did die right then. Like I tried to explain, during the struggle, like I said, I was in fear of my life. And I was trying to protect my life, and I was struggling with the kidnapper or Mr. Meredith or the gentleman to try to obtain possession of the weapon to keep this man from killing me. And this is all I could see right at that moment, that he was going to take my life. And I was trying to defend my life, and I struggled with the gentleman. Then I heard the shot, and I didn't turn around and point it at him. I didn't wait until I was down here and shot him, but during the struggle, that's when I heard the shot."

It appears the appellant testified that to keep Meredith from killing him, he was trying to obtain possession of the pistol, and during the struggle to get possession of the pistol it was unintentionally pointed and fired in the direction of Meredith.

When we attempt to apply the definition of recklessly found in the new Penal Code, we can find no evidence that the appellant acted in a reckless manner; i. e., there is no evidence that the appellant was aware of, but consciously disregarded, a substantial and unjustifiable risk that circumstances existed or the result would occur with respect to circumstances surrounding his con-

duct or the results of his conduct. The trial court did not err in refusing to submit to the jury the instruction on the law of involuntary manslaughter.

 If raised by the evidence, on timely request, a defendant is entitled to have the jury instructed that he may defend himself from apparent as well as actual danger as viewed from his standpoint at the time. This facet of the law of self-defense was not changed by the new Penal Code. *Jones v. State,* 544 S.W.2d 139 (Tex.Cr.App. 1976). Although the appellant's counsel carefully preserved the alleged error, the court in this case did not err in refusing to submit the requested charge, since the issue of apparent danger was not raised by the evidence. Here, the appellant's testimony is that he was in actual danger when he was attacked by Meredith. The appellant testified that Meredith was advancing toward him and that he was trying to take the pistol away from Meredith when Meredith was shot. This presented actual rather than apparent danger. In *Jones v. State,* supra, the deceased was unarmed, but the defendant testified that it appeared to him at the time that the deceased was armed and would attack him with a knife or a gun. It is not error to restrict the right of self-defense to an actual attack if the only theory of self-defense presented by the testimony is an actual attack and the danger, if there was danger, was patent and real to the defendant. See 4 Branch's *Penal Code,* 2d Ed. 428, Sec. 2106, where many cases are cited in support of this rule, including *Allala v. State,* 157 Tex.Cr.R. 458, 250 S.W.2d 207 (1952); *Jones v. State,* 89 Tex.Cr.R. 577, 232 S.W. 847 (1921); although these cases were decided under the former Penal Codes the new Penal Code has not changed the law in this respect.

 Again, although the alleged error was carefully preserved for review, the court did not err in refusing to instruct the jury on the law of defense of a third person. Before the use of force or deadly force against another to protect a third person is justified, one of the requirements is that the actor reasonably believe that his inter-

vention is *immediately necessary* to protect the third person. V.T.C.A. Penal Code, Sec. 9.33(2); see *Morgan v. State,* 545 S.W.2d 811, (Tex.Cr.App., decided January 19, 1977); *Conn v. State,* 143 Tex.Cr.R. 367, 158 S.W.2d 503 (1941). The appellant in this case had come from Florida to pay ransom for his cousin Richard Flores, who was allegedly being held by the deceased and others until they were paid some money that they had allegedly lost in a transaction in which they were attempting to purchase marihuana. The appellant had also testified that threats of death had been made toward Richard Flores and himself. However, there is no evidence that the deceased was making an attack or threatening an immediate attack upon Richard Flores. The deceased's attack, according to the appellant's testimony, was directed only toward the appellant. In these circumstances it does not appear that the evidence could have led the appellant to reasonably believe that his intervention was *immediately necessary* to protect Flores; therefore, since the evidence did not raise the issue, the court did not err in refusing to submit the requested charge.

 The remaining contention is that the court erred in failing to submit a charge that:

"A person is presumed to intend that which is the necessary or probable consequences of his acts, unless the contrary appears. A firearm is a deadly weapon. Deadly force is any force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing death or serious bodily injury."

Article 1223, V.A.P.C. (1925) and the cases interpreting this statute required the court to charge the jury that when a homicide takes place to prevent murder, if the weapon used by the party attempting to commit the murder is such as would have been calculated to produce that result, it is to be presumed the person using the weapon intended to murder or inflict the injury. However, Article 1223, V.A.P.C. (1925) was repealed by the new Penal Code, which

became effective January 1, 1974, before the alleged offense in this case was committed; no similar provision appears in the new Penal Code. The appellant argues that V.T.C.A. Penal Code, Sections 1.07(a)(11)(A), 9.01(3), and 22.05(a) and (b) may be combined and construed to require a charge similar to that required by Article 1223, V.A.P.C. (1925); we disagree. Although V.T.C.A. Penal Code, Section 2.05 provides for instructing the jury, when the Penal Code or another penal law establishes a presumption with respect to any fact, it has no application here, because there is now no presumption in the new Penal Code as that provided by Article 1223, V.A.P.C. (1925).

The judgment is affirmed.

Opinion approved by the Court.

ROBERTS, Judge, concurring.

Article 1223 of our former Penal Code provided:

"When the homicide takes place to prevent murder, maiming, disfiguring or castration, if the weapon or means used by the party attempting or committing such murder, maiming, disfiguring or castration are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury."

As we said in *Sistrunk v. State*, 486 S.W.2d 304, 305:

"The purpose of Article 1223, supra, is to require that the jury be told by the trial court that if a deceased or injured party was making an attack upon a defendant with a deadly weapon or with a weapon which from the manner of its use was calculated to produce death or serious bodily injury, the law presumes that the deceased, or injured party, intended either to kill or to inflict serious bodily injury on the accused."

Accord: *Borroum v. State*, 168 Tex.Cr.R. 552, 331 S.W.2d 314 (1960).

As Judge Davidson wrote in *Borroum*, the statute served an important function: It took "from the realm of speculation the intent of the deceased as an issue of fact and, under certain circumstances, fixe[d] his intent as a matter of law, and such intent [was] therefore binding upon the court and the jury." *Borroum v. State*, supra, at 555, 331 S.W.2d, at 316. See also *Middleton v. State*, 147 Tex.Cr.R. 146, 179 S.W.2d 510 (1944) (on motion for rehearing); *Smith v. State*, 15 Tex.App. 338 (1884).

As a result of Article 1223, we had a rule of law which applied with equal force to the State and the defense. This was true because of the well-established rule that where a deadly weapon per se was used *by the defendant* an intent to kill was presumed. Art. 45, V.A.P.C. (1925); *Short v. State*, 119 Tex.Cr.R. 34, 45 S.W.2d 587 (1932); *Davis v. State*, 440 S.W.2d 291 (Tex. Cr.App. 1969).[1]

Lamentably, the Legislature failed to include in our new Penal Code a provision like Article 1223. I am unable to understand the omission of such an important feature of our prior law, but I am bound to follow the law as enacted by the Legislature.

I reluctantly concur.

---

1. Accordingly, this Court held in *Short v. State*, supra, a prosecution for assault with intent to murder, that where the defendant shot the complainant with a pistol there was no need to define the phrase deadly weapon.