Josie **PAEZ**, Appellant,

v.

The **STATE** of Texas, State.

### No. 2–83–263–CR.

Court of Appeals of Texas,
Fort Worth.

July 3, 1985.

George Scharmen, San Antonio, for appellant.

Sam D. Millsap, Jr., Criminal Dist. Atty. and Edward F. Shaughnessy, III, Asst. Dist. Atty., San Antonio, for appellee.

Before BURDOCK, HILL and HOPKINS, JJ.

## OPINION

BURDOCK, Justice.

This a companion case to Amelia Bazan Pena.[1] Appellant, Josie Paez, was convicted by a jury of the murder of her husband, TEX.PENAL CODE ANN. sec. 19.02(a)(1) (Vernon 1974), and the jury assessed punishment at ten years confinement in the Texas Department of Corrections, probated. On November 9, 1983, in an unpublished opinion, this Court reversed appellant's conviction, finding the trial court erred in admitting into evidence an oral statement made by appellant to a child placement worker for the Texas Department of Human Resources, while appellant was in custody.[2] Subsequently, the Texas Court of Criminal Appeals reversed this Court's decision and held that the admission of the statement in question was not error.[3] The case is now before us for consideration of appellant's remaining grounds of error, one through four, and six through nine.

We affirm.

Inasmuch as appellant's third ground of error challenges the sufficiency of the evidence to support the verdict, we shall set out the factual details of the case.[4] During

the lengthy trial, there was much conflicting testimony concerning the manner in which appellant's husband, the decedent, Larry Manuel Paez, was shot and killed. Several observers testified that they saw appellant's co-defendant brandish a gun and shoot the decedent; several saw appellant exhibit a gun and shoot the decedent; and one thirteen year old witness saw the decedent shoot three shots from a gun. The testimony definitely established that appellant and her husband were physically struggling when the decedent was killed. An autopsy revealed that at the time of his death the decedent's blood alcohol content was .175 percent. The medical examiner testified that the decedent received a single gun shot wound to his chest and stomach; the bullet was fired from a .32 caliber revolver and was the cause of death. A gun was recovered on or under the front passenger's seat of the vehicle in which appellant and her co-defendant left the scene, and the ballistics expert determined that the fatal bullet was fired from this gun. When the gun was seized by the San Antonio Police Department, its cylinder contained six spent cartridges. This gun belonged to appellant's co-defendant's fa-

---

1. *Pena v. State*, No. 2–83–277–CR (Tex.App.—Fort Worth, Nov. 9, 1983) (unpublished).

2. *Paez v. State*, No. 2–83–263–CR (Tex.App.—Fort Worth, Nov. 9, 1983) (unpublished).

3. *Paez v. State*, 681 S.W.2d 34 (Tex.Crim.App. 1984).

4. We digress to express disapproval of the manner in which the record in this case was prepared by the official court reporter, Ronnie E. Reeves. Apparently, the testimony was recorded and transcribed by two court reporters, but there is absolutely no guidance provided in the appellate record to alert the reader that the nine volumes of statement of facts are *not* in chronological order. Therefore, in order to clarify the situation we will set out the variances: Vol. X must be inserted at p. 347 of Vol. III (also designated on inside cover page as Vol. II), and Vols. VII, VIII and IX (also designated on inside cover page as Vols. I, II, and III, respectively) must be inserted at p. 1283 of Vol. VI (also designated on inside cover page as Vol. V). Despite the fact that the court reporter herein was granted *five* extensions of time in which to

file the statement of facts—a total extension of fifteen months' time—he has not substantially complied with TEX.R.CRIM.APP.P. 201(c) which directs that an index shall be placed *in the front of each volume* of the statement of facts and shall include both an alphabetical and chronological index referring to the page at which the direct, cross, re-direct, or re-cross examination of each witness begins. While two volumes do contain such an index, and two other volumes contain a list of the witnesses whose testimony is contained therein (without reference to page numbers), absent a comprehensive search of the remaining volumes it is impossible to determine which witness's testimony is reported therein.

Inasmuch as the offense in this case occurred in 1979 and appellant's trial was held in October of 1980, we will not abate this appeal so as to require that the court reporter prepare a new statement of facts in proper form. In the interest of justice we will proceed to consider the merits of the appeal with the present state of the record; however, we expect strict compliance with the appellate rules when future records are submitted to this Court.

ther who testified that he had given the gun to his daughter.

Appellant's co-defendant, Amelia Bazan Pena, was tried jointly with appellant. The charge to the jury contained the standard instructions and application paragraphs on the law of parties and the law of self-defense. *See* TEX.PENAL CODE ANN. secs. 7.02, 9.31, and 9.32 (Vernon 1974). The jury found appellant to be guilty of murder, as alleged in the indictment. Appellant contends that the evidence was insufficient to show that she knowingly and intentionally killed the decedent.

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX.PENAL CODE ANN. sec. 7.01(a) (Vernon 1974). Each party to an offense may be charged with commission of the offense. *Id.* A person is criminally responsible for an offense committed by the conduct of another if, inter alia, "acting with intent to promote or assist the commission of the offense, he solicites, encourages, directs, aids, or attempts to aid the other person to commit the offense; ..." TEX.PENAL CODE ANN. sec. 7.02(a)(2) (Vernon 1974). If the evidence supports a charge on the law of parties, the court may charge on this theory even though there is no such allegation in the indictment. *Duff-Smith v. State,* 685 S.W.2d 26, 35 (Tex.Crim.App.1985). In determining whether an individual is a party to an offense and bears criminal responsibility therefor, a court may look to events before, during, and after the commission of the offense. *Freeman v. State,* 654 S.W.2d 450, 453–54 (Tex.Crim.App.1983). *Morrison v. State,* 608 S.W.2d 233, 234 (Tex.Crim.App.1980); Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence. *Freeman,* 654 S.W.2d at 454. Further, an agreement of the participants to act together in a common unlawful act or design may be established by circumstantial evidence. *Id.; Wygal v. State,* 555 S.W.2d 465, 468–69 (Tex.Crim.App.1977).

While it is true that mere presence at the scene of an offense, and flight therefrom, are not sufficient to support a conviction under section 7.02(a)(2), they are circumstances tending to prove guilt which, when combined with other facts, may suffice to show the accused was a participant. *Thomas v. State,* 645 S.W.2d 798, 800 (Tex. Crim.App.1983). *Ashabranner v. State,* 557 S.W.2d 774, 776 (Tex.Crim.App.1977). In making this determination, it is proper to consider the actions of the parties which show an understanding and common design to murder the decedent. *Barron v. State,* 566 S.W.2d 929, 931 (Tex.Crim.App.1978).

In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, we must view the evidence in the light most favorable to the verdict. *See Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex. Crim.App.1983) (opinion on rehearing).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a Court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believed that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *See Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim. App.), *cert. denied,* — U.S. ——, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).

Appellant testified on her own behalf, frequently utilizing an official court interpreter. At the time of trial appellant was a twenty-five-year-old woman who had married the decedent in 1969 when she was fourteen years of age. Appellant testified that the decedent frequently beat her up and used spray paint to get high. She stated that on August 11, 1979, the date he was killed, she and her husband were living

separately when he telephoned her and asked her to meet him to discuss their pending divorce suit. Appellant requested that her two brothers and a friend take her to meet her husband, and she also asked her neighbor, Amelia Pena, to accompany her. At this meeting, the decedent and appellant became involved in a physical confrontation and the decedent attacked appellant with a knife and cut three fingers on her right hand. Appellant testified that decedent's female companion, Elodia (Gloria) Godina, then threw the decedent a gun which appellant attempted to grab. Appellant stated that the decedent fired two or three shots, one of which hit appellant's left hand, whereupon she started screaming for someone to help her, and she heard the voice of Gloria Godina saying "Kill her, Larry, kill her, Larry". Appellant then saw her co-defendant shoot three times at the decedent's feet; however, appellant had no idea at the time that Pena was in possession of a gun, and appellant herself had no weapons.

Appellant's co-defendant, Amelia Bazan Pena, testified that she is twenty-five years old and is appellant's neighbor in the apartment complex. Both women characterized their relationship as being that of casual neighborly acquaintances, and both stated that their only contact was when Pena would use appellant's telephone. Pena acknowledged that approximately a year before this incident she had been given a gun by her father following a burglary at her apartment which had occurred at a time when her family was sleeping in the apartment. On the day the decedent was killed, Pena's father telephoned her at appellant's house and requested that Pena bring the gun to him so that he could stay overnight at his automotive shop in an attempt to determine who was breaking into his place and stealing his expensive tools. (In his testimony, Pena's father corroborated this statement.) Pena then told appellant she needed a ride to her father's shop, but she did not explain the contents of the telephone conversation. Additionally, Pena did not tell appellant that she was going to put a gun into her purse and take it to her

father. Pena's account of the incident which resulted in the decedent's death was essentially identical to appellant's version. She testified that after appellant and the decedent fought over the knife, Pena saw Gloria Godina give a gun to the decedent, whereupon appellant started crying "Help me, help me, he is killing me". The decedent then started firing the gun and it appeared to Pena that he was killing appellant. Pena proceeded to take her gun from her purse and she began shooting to the ground so as to scare the decedent.

Numerous eye witnesses testified on behalf of the State. Gloria Godina testified that at about 5:30–6:00 p.m. on August 11, 1979, appellant appeared outside the decedent's apartment and called to the decedent to get out of the car because she wanted to speak with him. After the decedent exited the car, appellant put both arms around him, at which time the decedent yelled to the witness to drive off, which request she complied with. The witness then looked into her rear view mirror and saw the couple struggling.

Petra Cano, the decedent's sister, stated that appellant approached the decedent while he was in Gloria's car, put her arm around him when he exited the car, and appellant proceeded to pull out her gun and shoot him. Cano testified that Pena, who was standing next to appellant, then shot three times at the decedent's feet and that after the decedent collapsed, both women fled.

Claudia Paez, the decedent's sister, testified that she was a passenger along with the decedent and Gloria Godina, in Gloria's automobile when it arrived at the scene. Appellant opened the door next to the decedent and told him she wanted to talk with both him and Gloria. After the decedent got out of the car, appellant put her right arm over his shoulders, took a gun out of her bra and fired three shots. She then fired another three shots aimed at the decedent's heart. The witness was going to defend her brother, but Pena stopped her by pointing a gun in her direction. Pena then aimed the gun in the decedent's di-

rection and fired three shots. The witness stated that the decedent was not carrying any weapon at the time of his death.

■ We have reviewed the testimony of the various other witnesses in the light most favorable to the verdict, and we conclude that there is evidence justifying a jury finding beyond a reasonable doubt that appellant knowingly and intentionally, either separately or acting as a party, killed her husband. Appellant's third ground of error is overruled.

■ Appellant's first ground of error asserts error arising out of the trial court's refusal to grant appellant's motion to sever this cause from that of her co-defendant, Amelia Bazan Pena. Appellant filed a pretrial motion to sever, claiming: 1) no notice had been given of the State's intention to join the two defendants; 2) no order had been entered joining the two defendants; and 3) joinder would prejudice appellant. TEX.CODE CRIM.PROC.ANN. art. 36.09 (Vernon 1967) provides, in pertinent part, that:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; ... provided that *in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court* that there is a previous admissible conviction against one defendant or *that a joint trial would be prejudicial to any defendant, the court shall order a severance* as to the defendant whose joint trial would prejudice the other defendant or defendants. [Emphasis added.]

*Id.* A severance under this article is not a matter of right, but rests within the trial court's discretion. *Garza v. State,* 622 S.W.2d 85, 91 (Tex.Crim.App.1981) (opinion on rehearing); *Calverley v. State,* 511 S.W.2d 60, 62 (Tex.Crim.App.1974).

■ Appellant presented no testimony at the hearing on the motion to sever, other than comments by her attorney that appellant would be severely prejudiced by having a joint trial and that there was "a potential conflict or disparity between the defendant [sic] as to the manner in which the punishment will or may be assessed." On appeal, appellant contends that "[t]he prejudice arose from the fact that all the trial testimony was very contradictory. The statement showed appellant actually struggling with the decedent." As will be discussed at ground of error five, *infra,* the statement referred to was admissible against appellant, and we are at a loss to understand how the possible introduction of appellant's own statement mandated a severance in this cause. Further, no evidence was introduced by appellant in support of her motion to sever, other than unsworn assertions by appellant's attorney that possible prejudice would result from a joint trial. We find no abuse of discretion in the trial court's denial of appellant's motion to sever. Appellant's first ground of error is overruled.

In her second ground of error, appellant alleges that the trial court erred in denying appellant's request, made pursuant to the rule in *Gaskin v. State,* 172 Tex.Crim. 7, 353 S.W.2d 467, 468 (1962), for production of the written statement of a State's witness, Petra Cano, to be used for purposes of cross-examination. Although the witness initially testified that she remembered signing a statement at the San Antonio Police Station, she later stated that the officer interviewing her was typing at the time, but he never asked her to sign any document. The State contended at trial that with regard to this particular witness, no such statement existed in their files. Further, the prosecutor stated that he had spoken with the Homicide Bureau and that an inspection of their file revealed that "there was no statement made by Petra Cano. The police report from detective in charge of the murder investigation list [sic] a number of witnesses whose statements were taken, none of the names listed there is listed as Petra Cano."

The trial court ruled that if there was any written statement of the witness, the defendant was entitled to it under the *Gaskin* rule. The court further ruled that both the State and the Court had looked for such a statement and could not find one; however, if one was later found, the defense would then be entitled to it.

Appellant cites two cases in support of her proposition that the trial court erred. *Darrington v. State*, 493 S.W.2d 244 (Tex.Crim.App.1973), although an accurate statement of the law, is inapplicable to the instant case because it stands for the proposition that the *Gaskin* rule entitles an accused to view a witness's written statement regardless of whether the witness used the statement to refresh his memory. *Id.* at 245. In *Norman v. State*, 575 S.W.2d 34 (Tex.Crim.App.1979), the second case relied upon by appellant, the Court held that although the inability of the prosecution to produce the statement of the witness was harmless under the circumstances of that case, "it would have been a better practice for the prosecution to have called an officer or officers to testify concerning the failure to locate the missing statement." *Id.* at 35. *See also Patterson v. State*, 598 S.W.2d 265, 270–71 (Tex.Crim.App.1980). While it would have been better procedure in the instant case had the prosecution called as a witness the investigating detective from the Homicide Bureau for the purpose of clearly establishing that no written statement was ever signed by Petra Cano, or that the statement appeared to have been irretrievably misplaced, we find that given the conflicting responses of the witness with regard to whether she actually signed a written statement, the trial court did not err in its ruling. Ground of error two is overruled.

Appellant's fourth ground of error asserts that the trial court erred in overruling appellant's objection to the prosecutor's eliciting "other acts of misconduct on the part of appellant". Specifically, the record reflects that on cross-examination of appellant the State attempted to impeach appellant's prior testimony that while she was good with the children, her husband was very bad with the children. Appellant's counsel initially objected that the prosecutor was trying to impeach the witness on an immaterial, collateral matter. The Court overruled the objection and the State then inquired:

Q. Okay. Now, I am going to direct your attention to May 7th, 1978 that was a Sunday. Now, that might not [sic] been big to you, but that was about three months after Juanito was born, do you remember leaving the house at that time and not taking the children with you, not telling your mother where you were going, not telling Larry where you were going, not telling anybody where you were going?

A. No, Sir.

Q. Left for a weekend?

A. No, Sir.

MS. MARQUEZ [co-defendant's attorney]: Your Honor, I am going to object, the reputation—

THE COURT: Overrule your objection.

MS. MARQUEZ: Note my exception.

(QUESTIONS BY MR. RODRIQUEZ [Assistant District Attorney])

Q. Do you remember that weekend the children were placed with Mrs. Zertuche and your mother Mrs. Gomez and Mrs. Dillard, do you remember that weekend now?

A. When was that?

Q. In May of 1978.

MR. COBB [appellant's counsel]: I object, Your Honor. Certainly nothing wrong with leaving the children a couple of days with Mrs. Zertuche and the grandmother.

THE COURT: Overruled.

MR. COBB: Exception.

(QUESTIONS BY MR. RODRIQUEZ)

Q. You left the children, just walked out of the apartment and went away.

A. No.

MR. COBB: I object. He testified she left.

THE COURT: Overruled.

(QUESTIONS BY MR. RODRIQUEZ)

Q. You didn't leave them? You didn't care about the children? You just walked out?

A. No, Sir. I care about my children.

Q. So you are going to stand by that testimony that you did care about your children?

A. I do because they are my children and—

Q. Okay.

Both defendants' counsel subsequently perfected a lengthy bill of exception in which they attempted to demonstrate, among other things, that during this cross-examination the prosecutor was visually referring to a document before the jury. Appellant asserts that this conduct by the prosecutor, when combined with the cross-examination regarding appellant's alleged "extraneous offense", constituted reversible error. We disagree.

 Nowhere in the record did appellant's counsel specifically object on the grounds that the complained of testimony constituted improper impeachment regarding an extraneous offense. It is elemental that: 1) a general objection is not sufficient to preserve error, see Goodrich v. State, 632 S.W.2d 349 (Tex.Crim.App.1982); 2) an objection to evidence must be timely to preserve error for review, see Marini v. State, 593 S.W.2d 709, 714 (Tex.Crim.App. 1980); and 3) error urged on appeal must comport with the objection made at trial or error is not preserved, see Denison v. State, 651 S.W.2d 754, 762 (Tex.Crim.App. 1983). We find that error, if any, was waived by appellant's failure to specifically object at trial on the ground of error urged on appeal. See id. Appellant's fourth ground of error is overruled.

Appellant's fifth ground of error concerns the alleged error of the trial court in admitting an oral statement made by appellant to a social worker, Patricia Vera. This matter has previously been resolved against appellant. See Paez v. State, 681 S.W.2d 34 (Tex.Crim.App.1984). Accordingly, the ground of error is overruled.

Appellant next claims in ground of error six that the trial court erred in allowing the State to impeach its own witness during the State's case-in-chief. Raul Gomez, appellant's seventeen year old brother who was called as a prosecution witness, testified that he never saw either appellant or her co-defendant in possession of a weapon, nor did he see a gun in the car in which he rode, and in which the defendants were taken to the hospital after the incident in question. He further stated he was unaware of who actually shot the decedent. However, outside the presence of the jury, the State impeached the witness's testimony by using a written statement which had been signed by him on the evening of the shooting. In the written statement, the witness contradicted his trial testimony and made several important statements, which at trial he denied having made. Specifically, the witness's statement acknowledged that:

1) He heard Amelia Pena tell appellant that Pena's father had a gun, whereupon the co-defendant left and came back a little while later with a gun underneath her blouse, tucked into her pants;

2) Pena checked the gun to see if it was loaded and the witness saw some small bullets;

3) After the defendants were dropped off near the decedent's house, the witness heard two shots and after running in the direction of the shooting, he saw appellant and the decedent struggling over a knife, and he saw Pena shoot appellant in the hand;

4) He immediately heard another shot and saw Pena holding the gun and he viewed the decedent bleeding alot;

5) On the way to the hospital, Pena put the gun underneath the seat and told appellant she was sorry she had shot her.

The propriety of impeaching one's own witness is set forth in TEX.CODE CRIM. PROC.ANN. art. 38.28 (Vernon 1979):

A party may, when testimony of his own witness is injurious to his cause, attack the testimony in any manner except by

offering evidence of the witness' bad character.

*Id.* The rules applicable to the implementation of this provision have been delineated by the Texas Court of Criminal Appeals in *Goodman v. State,* 665 S.W.2d 788 (Tex. Crim.App.1984) as follows (supporting citations have been omitted):

1) Before an attorney or party is allowed to impeach his own witness, he must establish the proper predicate by showing not only that the witness's testimony has surprised the party, but also that it is injurious to his cause.

2) Since the issue of surprise is to be determined by the court and not the jury, the attorney should request the court to conduct a hearing outside the presence of the jury.

3) A mere claim of surprise or statement to the court to that effect is insufficient to allow impeachment; surprise must be demonstrated.

4) The attorney attempting to impeach his own witness may testify as to surprise and call other witnesses to demonstrate the same. In order to demonstrate surprise the party must show prior conversations with statements by the witness, outside the presence of the jury.

5) Foreknowledge of the witness's testimony precludes impeachment even though such testimony is decidedly adverse on a vital issue.

6) If the witness admits he made a contrary statement but states he made it by mistake, and prior to trial informs the calling party of such fact, surprise is not shown and the statement should not be used to impeach him.

7) The purpose of the rule requiring a showing of surprise is to prevent a party from calling a witness whom the party knows in advance will testify adversely and then, under the guise of impeachment, present before the jury the testimony which the party would have hoped to elicit from the adverse witness.

8) Once the party demonstrates surprise, it is incumbent that the party also show the witness's testimony is injurious to his cause.

9) It is not sufficient that the witness merely fails to testify as expected or remembers facts favorable to the calling party.

10) If the calling party has offered no evidence to prove a relevant fact, it cannot be said that the witness, through denial of the existence of such fact, has by such denial stated facts injurious to the calling party's cause.

11) If the facts supporting both surprise and injury are proved to the satisfaction of the court, then the proper predicate has been established and the attorney should be allowed to impeach the witness in the presence of the jury.

*Id.* at 791–92.

Applying these rules to the case at bar, our review of the record indicates that the State established the proper predicate by showing both that it was surprised by the witness's testimony, and that the testimony was injurious to its cause. Appellant claims that the trial testimony of the witness "was merely cumulative of other poor testimony presented by the State, and it constituted no harm to the State's case", and in view of the conflicting testimony of all the evidence at trial, was reversible error. We disagree and find the trial court did not err in allowing the State to impeach its own witness, Raul Gomez. Ground of error six is overruled.

In her seventh ground of error appellant contends the trial court erred in refusing to give her requested limiting instruction on the use of the appellant's oral statement given to the social worker, Patricia Vera, the social worker and discussed in ground of error five, *supra.* Appellant's position is that in all cases of multiple defendants, where one defendant's confession has been admitted into evidence, the trial court is required to guard the rights of the co-defendant by giving a charge limiting the purpose of the confession to establishing the guilt of the confessor only. *See Evans v. State,* 500 S.W.2d 846, 849 (Tex.Crim.App.1973). While this is a cor-

rect statement of the law, appellant's theory overlooks two reasons why *Evans* is inapplicable to the instance case.

Firstly, the confession in the case at bar was that of *appellant herself*, and not that of her co-defendant. Therefore, we find that appellant lacks standing to challenge the failure of the trial court to limit the use of appellant's statement, inasmuch as this objection may only be raised by the party who may have been allegedly harmed—appellant's co-defendant.

Secondly, appellant submitted a requested instruction which basically told the jury that unless they found that appellant's statement to Vera complied with the requisites specified in TEX.CODE CRIM.PROC. ANN. art. 38.22, sec. 2 (Vernon 1979), necessary for admission into evidence of an accused's *written* statement, they should not consider appellant's statement for any purpose. On appeal, appellant is advocating a position which differs substantially from the position she advanced at trial. Therefore, nothing is presented for review. *See Denison*, 651 S.W.2d at 762; *Mitchell v. State*, 650 S.W.2d 801, 810 (Tex.Crim. App.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 985, 79 L.Ed.2d 221. Appellant's seventh ground of error is overruled.

Appellant's eighth ground of error challenges the trial court's refusal to submit appellant's requested charge on apparent danger. If raised by the evidence, on timely request, a defendant is entitled to have the jury instructed that he may defend himself from apparent as well as actual danger as viewed from his standpoint at the time of the incident. *Brooks v. State*, 548 S.W.2d 680, 684 (Tex.Crim.App.1977). Appellant's own direct testimony clearly established that the decedent attacked appellant with a knife, and as they struggled appellant's right hand was cut. This presented actual rather than apparent danger. *See id.* It is not error to restrict the right of self-defense to an actual attack if the only theory of self-defense presented by the testimony is an actual attack and the danger, if there was danger, was pat-

ent and real to the defendant. *See id.* Appellant's eighth ground of error is overruled.

In her final ground of error, appellant claims the trial court erred in overruling appellant's objection and motion for mistrial when the prosecutor went outside the record during his closing argument at the guilt/innocence stage of the trial. Contrary to appellant's assertions, the record reflects that her trial counsel did not lodge any objection to the complained of jury argument. Nor did counsel attempt to adopt his co-counsel's objection. *See Govan v. State*, 682 S.W.2d 567, 568–69 (Tex. Crim.App.1985); *Garza v. State*, 622 S.W.2d 85, 89 (Tex.Crim.App.1981) (opinion on rehearing); *Woerner v. State*, 576 S.W.2d 85, 86 (Tex.Crim.App.1979) (opinion on rehearing). In the absence of an objection, nothing is presented for review. *See Hawkins v. State*, 628 S.W.2d 71, 73 (Tex. Crim.App.1982). We overrule appellant's ninth ground of error.

The judgment of the trial court is affirmed.