Terrence Eugene **TATE**, Appellant,

v.

**STATE of Texas, Appellee.**

No. 01–87–00612–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 23, 1988.

George M. Secrest Jr., Sparks & Secrest, Houston, for appellant.

John B. Holmes, Dist. Atty., Linda West, Asst. Dist. Atty., for appellee.

Before WARREN, LEVY and DUGGAN, JJ.

## OPINION

WARREN, Justice.

A jury found appellant guilty of murder and, after appellant pled true to two enhancement paragraphs, assessed his punishment at 30 years confinement. Appellant was tried jointly with his father, Floyd Tate, who was also found guilty and whose punishment was assessed at 60 years confinement.

In six points of error, appellant claims that:

(1) the court erred in charging the jury on parole, over appellant's specific objection;

(2) the prosecutor injected extraneous offenses into the case;

(3) the trial court should have granted a new trial based on newly discovered evidence; and

(4) the evidence was insufficient to support the conviction.

■ We shall first consider appellant's claim that the evidence was insufficient to support the conviction.

Debbie Prosper, the State's sole eyewitness, testified that she, the Tates, and the deceased had been drinking beer at a nearby convenience store shortly before the murder; that she had known the deceased and the Tates for about five years; that the deceased asked appellant for a ride home, but appellant refused; that she and the deceased then sat on appellant's car talking and drinking beer, while appellant and Floyd sat inside the car; that half an hour later, appellant left, and Prosper and the deceased walked to the bus stop; that after about 20 minutes, the Tates drove by and the deceased flagged them down; that the deceased talked to the Tates from the passenger side, where appellant was seated; that appellant then got out of the car and began beating the deceased with a chain; that after the deceased caught the chain, Floyd approached the deceased, who was unarmed, and stabbed him; that Floyd washed the knife in a puddle of rainwater; and that she got in the car with the Tates and left the scene.

At the guilt stage, appellant took the stand and strongly contradicted Debbie Prosper's story. He testified that he and his father had been drinking at a bar before the incident, and that they met the deceased and Debbie Prosper at the bar. He testified that his father and a man with

a bicycle left the bar in his father's car. The deceased and he talked about stealing the bicycle and pawning it. Appellant took the bicycle to a grocery store in the area and pawned it for $3.50. His father picked him up at the grocery store, and they drove off in the car. As they drove by the corner of Southmore and Ennis, the deceased waved at them to pull over. His father turned the car around and pulled up to within 15 feet of the bus stop. The deceased then angrily approached the car and began yelling at the appellant for withholding the proceeds from pawning the bicycle. Appellant, unarmed, left the car and began fighting with the deceased. The deceased struck appellant and he fell to the ground, where he remained. The deceased then threatened to kill him, and he heard a click that he associated with a knife. At this point, Floyd got out of the car with a chain and swung it at the deceased in an attempt to knock away the knife. During the struggle for the knife, Floyd stabbed the deceased in self-defense. Appellant and Floyd then re-entered the car and called for Debbie Prosper to join them. Prosper had been seated at the bus stop. She entered the car and the three of them drove to appellant's grandparent's house, where they ate dinner.

The State also produced a witness, Dwight Lionee Laverne, who testified that she was in an upstairs apartment near the bus stop and that she heard a woman shouting "Stop it." She also heard someone say, "That's enough, that's enough. You got it." When this witness looked out the window, she saw a yellow Ford parked in front of the bus stop and two black males ordering a black female into the car. The car then drove away.

A physician from the coroner's office testified that a stab wound to the heart was the cause of death, but that there were no marks on the body consistent with an attack involving a chain.

The jury was charged on the law of parties pursuant to Tex.Penal Code Ann. §§ 7.01, 7.02 (Vernon 1974). The jurors were instructed that if they found beyond a reasonable doubt that Floyd Tate unlawful- ly, intentionally, or knowingly caused the death of the deceased by stabbing him with a knife, or that Floyd Tate unlawfully intended to cause serious bodily injury to the deceased, and did cause serious bodily injury to the deceased by intentionally or knowingly committing an act clearly dangerous to human life, namely, cutting or stabbing the deceased with a knife, and that Terrence Tate, acting with intent to promote or assist the commission of the offense of murder, did solicit, encourage, direct, aid, or attempt to aid Floyd Tate to commit the offense by striking the deceased with a chain, then they must find Terrence Tate guilty of murder.

The jury was free to believe Debbie Prosper's testimony, or any part thereof, and to disregard the testimony of appellant. We may not substitute our opinion for that of the fact finder. Viewing the evidence in the light most favorable to the prosecution, we hold that any rational finder of fact could have found all the essential elements of the charged offense beyond a reasonable doubt. *Burks v. State*, 693 S.W.2d 932, 938 (Tex.Crim.App.1985).

Appellant's sixth point of error is overruled.

■ Appellant's first and second points of error complain that the trial court committed reversible error in submitting a charge to the jury on parole law during the punishment phase of the trial, pursuant to Tex.Code Crim.P.Ann. art. 37.07, sec. 4 (Vernon Supp.1988). Appellant argues that article 37.07, section 4 is unconstitutional because the instruction violates the separation of powers doctrine and appellant's rights to due process of law. Tex. Const. art. II, sec. 1; art. I, sec. 19. Charging the jury on the law of parole, pursuant to article 37.07, section 4(a), has been held unconstitutional as a violation of the separation of powers provision of the Texas Constitution. *Rose v. State*, 752 S.W.2d 529, 552 (Tex.Crim.App.1988) (op. on reh'g). Appellant lodged an objection to the inclusion of the parole charge in the court's instruction to the jury. Therefore, the conviction will be reversed unless the appellate court determines beyond a reasonable

doubt that the error made no contribution to the conviction or to the punishment. *Id.* at 553–54; Tex.R.App.P. 81(b)(2).

Appellant was charged with murder, enhanced by two prior felony convictions, with a punishment range of from 25 to 99 years or life. The prosecutor did not mention the parole charge during argument. The jury, after hearing appellant plead true to the paragraphs alleging prior felony convictions, still assessed his punishment at 30 years, very near the minimum authorized by law.

After considering the entire jury charge, jury argument, and the evidence, we find beyond a reasonable doubt that any instruction given pursuant to article 37.07, section 4 resulted in no harm to appellant.

Appellant's first and second points of error are overruled.

■ Appellant's third point of error claims that the prosecutor erroneously and prejudicially injected an extraneous offense into the case during his cross-examination of appellant at the guilt stage of this trial.

The examination of which appellant complains is as follows:

Q: Have you left anything out, Mr. Tate, as to where you went after you left your grandparents house and the grocery store?

A: No, sir.

Q: Didn't your father and you go on a lone mission to score happiness?

A: No, sir.

Q: Isn't it a fact that you went and scored some heroin with your father after this offense?

[DEFENSE COUNSEL]: Your Honor, I object to that. May we approach the bench?

[THE COURT]: Yes, sir.

The jury was retired, and the prosecutor was questioned under oath by the defense attorneys and by the trial judge regarding any good faith legal basis he had for asking these questions before the jury. The prosecutor conceded that nothing in the offense report showed that the Tates purchased heroin just after the killing or on any specific date. The prosecutor explained that there were references to heroin in his offense report, including an assertion by Debbie Prosper that the Tates were "both using heroin." Finally, he mentioned a reference in Floyd's penitentiary packet regarding a drug treatment program for heroin.

The court then questioned the prosecutor:

[THE COURT]: Do you have anything in that offense report or in [Prosper's] statements that say that on that night that it was done? Not the next night or the night before. We are talking about the night of this alleged offense?

[PROSECUTOR]: Probably no. It is strictly up to interpretation. I don't see it as strictly that night. It is a continuing thing. It is a continuing thing where Ms. Prosper is there the next day. She saw the whole transaction. It is a continuing thing. The State contends that it is a continuing thing that continues until Ms. Prosper left the next day. She saw the whole thing.

I also have Sergeant Evans who will testify that they found some syringes in the house [where the Tates were arrested], which is indicative of heroin use. Furthermore your Honor, the State's position would be that counsel for the defense, Mr. McLean, has brought up presence of a syringe at the scene [of the killing]. I think, unfortunately, that drugs are unfortunately an aspect, an irrelated (sic) fact of this offense.

[DEFENSE ATTORNEY]: I would agree that there was a syringe at the scene but I never accused Ms. Prosper of using heroin or any kind of reference to that.

[THE COURT]: The Court is going to instruct the jury.

The Court then instructed the jury as follows:

Members of the jury, you are going to receive some strong admonitions from the Court concerning certain testimony. This will be the strongest so far. Please listen very, very carefully.

The last question proposed by the prosecutor, you are to forget that for any purpose whatsoever. At no time do I want you to consider it in your own individual consideration or in your collective deliberation. I don't want it to ever be brought up back there in the jury room for any purpose. Again, I cannot make it any stronger than that. It is that important. You put that last question of the prosecutor completely out of your mind, completely out of your consideration and certainly out of your deliberation from what is going on. It is that important, please.

The court then denied the motions for mistrial by both defendants.

The prosecutor's accusation that appellant and his father obtained some heroin after the slaying, and before they went home, although inadmissible and prejudicial, was not so inflammatory as to undermine the trial court's prompt and strong instruction to disregard it. *Gardner v. State*, 730 S.W.2d 675 (Tex.Crim.App.1987); *Davis v. State*, 642 S.W.2d 510 (Tex.Crim.App.1982).

The question *asked* in our case was much more innocuous than the *answers given* in *Gardner* and *Davis*. Further, the strong instruction given in our case left no doubt in the jury's mind that the question was improper, that it should not have been asked, and possibly that the prosecutor had no basis for asking it.

Appellant's third point of error is overruled.

Appellant's fourth point of error claims that his right to due process under Tex. Const. art. I, sec. 19, was violated by the injection of the robbery issue.

Appellant theorizes that the insinuation by the prosecutor that appellant and his father robbed the complainant after the murder had the effect of changing the indictment from murder to capital murder.

Initially, we must state that the testimony of the only eyewitness who testified, Debbie Prosper, and appellant, refuted that appellant or his father took or attempted to take anything from the deceased.

Dwight Laverne testified that from her nearby apartment, she heard a voice saying "like, that's enough. That's enough. You got it. You got it. That's enough." The deceased's mother testified that certain personal property possessed by the deceased when he left home that night was missing when she identified his body.

On cross-examination, the prosecutor asked appellant these questions of which appellant complains:

Q: Isn't it a fact that you were trying to get his wallet and his jewelry?

A: No, sir.

Q: Did you get his neck chain?

A: No, sir.

Q: Was Mitch wearing any of that?

[MR. McLEAN]: (Counsel for Co–Defendant, Floyd Tate) *Your Honor, I'm going to object to that. That's out of the scope of this indictment. We have no notice of any robbery in this lawsuit.*

[THE COURT]: *That will be overruled. You may proceed.* (Emphasis added.)

During the prosecution's argument at the punishment phase of the trial, appellant complains of the following argument and ruling:

Now, we look at Floyd Tate and I want you to take back with you State's Exhibit "23" and "24." I want you to take them back with you. You see that Floyd has been convicted of felony possession of a firearm. He is a convicted felon carrying a pistol away from his premises. First clue, violent offenses? Second clue. Been convicted of robbery. That's right, *Floyd had been convicted of robbery and the apprenticeship has now ended* (Emphasis added.)

[MR. SECREST]: Your Honor, I object to that. I believe that counsel is trying to imply somehow that robbery was involved in this case. It is not alleged in the indictment that we were given and we were given no fair warning of that and I strongly object to any such allusion.

[THE COURT]: Sustained.

[MR. SECREST]: I would ask the Court to strongly instruct the jury to disregard that last comment.

[THE COURT]: The jury will disregard the last statement by the prosecutor as far as apprenticeship of any robbery in any way regarding Terrance Tate.

[MR. SECREST]: And, your Honor, we would also respectfully move for a mistrial.

[THE COURT]: Denied.

■ We first note that appellant made no objection to the question on cross-examination, and no effort was made to adopt co-counsel's objection, thus no error is preserved. *Woerner v. State*, 576 S.W.2d 85 (Tex.Crim.App.1979); *Paez v. State*, 693 S.W.2d 761 (Tex.App.—San Antonio 1985, no pet.).

■ But even if error was preserved, we do not consider the cross-examination improper. The testimony of Mrs. Laverne and the deceased's mother suggested that there could have been a robbery.

■ Concerning appellant's second contention, we are not sure what the prosecutor's last cryptic sentence meant or what it suggested to the jury. If it meant that Floyd Tate was a violent person who had been previously convicted of robbery, and had now graduated to the status of murderer, it was a fair comment on the evidence. If it meant that Floyd Tate robbed the deceased, and implied that appellant was a participant, it was not very effective because the jury assessed appellant's punishment near the minimum allowed. If the argument was harmful at all to appellant, the judge's instruction cured any harm.

The fourth point of error is overruled.

Appellant's fifth point of error alleges that the trial court abused its discretion in denying appellant's motion for new trial.

■ Appellant filed a motion for new trial on the basis of newly discovered evidence favorable to the accused, pursuant to Tex.R.App.P. 30(b)(6). The trial court conducted an evidentiary hearing and overruled the motion.

At the hearing, James Sammon, a 56-year-old, physically handicapped, white male, who wore bifocal glasses, testified that he had observed the incident involving the Tates and the deceased from a distance of about 75 to 100 feet. He testified that the only illumination was from the headlights of passing cars. Nonetheless, he testified that he could clearly identify Terrence and Floyd Tate, the deceased, and Debbie Prosper. He testified that the deceased angrily approached the car driven by Floyd Tate, that Terrence Tate got out of the car and began to fight with the deceased, and that Terrence was struck by the deceased and fell down in the road. He then saw Floyd and the deceased struggle and fall down. Floyd got up and returned to the car, and the deceased got up and walked to the ledge by the bus stop and sat down. He testified that after Terrence fell down in the road, he did not take part in any further fighting and had no further contact with the deceased. He testified that Terrence did not have a chain, and that the witness could see no weapons from where he was sitting. The witness testified that he had lived in the Third Ward for 18 months while being treated at the V.A. hospital nearby, and was in the area to see friends on the night of the incident. He testified that he knew both the appellant and his father by sight and knew Philip Tate, the appellant's grandfather. He testified that he believed the incident to be typical of the Third Ward and did not know that a crime had been committed until he read of the appellant's conviction in the newspaper. He testified that he stayed near the scene of the crime at least until police arrived, but that he did not approach the police because of difficulty in using his walker. At the time of the hearing in September 1987, the witness used a wheelchair. The trial court's only statement in denying the motion was that the witness admitted that he could see only by the illumination of the passing cars.

A motion for new trial is directed to the sound discretion of the trial court, and its denial of such a motion will not be reversed absent a clear abuse of discretion. *Jones v. State*, 711 S.W.2d 35 (Tex.Crim.App.

1986). To reverse for such abuse of discretion, the record must show:

(1) that the evidence was unknown to the movant before trial; (2) that the failure to discover it was not due to appellant's want of diligence; (3) that its materiality was such as would probably bring about a different result on another trial; and (4) that it was competent, not merely cumulative, corroborative, collateral or impeaching.

*Carlisle v. State,* 549 S.W.2d 698, 704 (Tex. Crim.App.1977).

The witness Sammon insisted that despite the poor lighting and his proximity to the combatants, he could identify both Floyd Tate and appellant, and could distinguish what each of them was doing during the fracas. Yet, he denied having seen a chain being swung or a man being stabbed, both crucial events that undeniably occurred, according to the testimony of Debbie Prosper and appellant.

Further, Sammon's testimony that, though he was present when the police arrived, he said nothing to them because of his difficulty in using his walker, does not explain why he could not get their attention by flashing his car lights, honking his horn, or hollering.

In our opinion, the trial judge could have reasonably decided that the evidence lacked credibility or that it probably would not bring about a different result upon a new trial, either of which would have justified his refusal to grant a new trial. *Jones,* 711 S.W.2d at 35.

Appellant's fifth point of error is overruled.

The judgment is affirmed.