Flores 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-155-CR





JOSE A. FLORES,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 0912568, HONORABLE JON N. WISSER, JUDGE PRESIDING


 




 Appellant was convicted of the murder of Travis County Corrections Officer
William Roderick Redman. Tex. Penal Code Ann. § 19.01 (West 1989). Punishment was
assessed at confinement for life in the Institutional Division of the Texas Department of Criminal
Justice. After appellant's conviction, the prosecutor notified appellant and the trial court that the
police had taken a written statement from a trial witness that had not been disclosed to defense
counsel prior to trial. Appellant filed a motion for new trial, contending that the statement
constituted exculpatory evidence. After a three-day hearing, the trial court denied appellant's
motion. We will affirm the conviction.



THE CONTROVERSY


 The following is derived from testimony presented at trial and during the hearing
on appellant's motion for new trial.

 At approximately 11:30 p.m. on February 21, 1991, Travis County Corrections
Officer William Roderick Redman was beaten to death. His body was found by Austin Police
Officer Leon Williams in the parking lot of John Salazar's apartment. Officer Williams found the
victim upon arriving at Salazar's apartment, with Salazar in his custody. Officer Williams had
taken Salazar into custody nearby for an unrelated incident half an hour earlier.

 After the victim's body was discovered, John Salazar was the prime suspect for the
murder of Officer Redman. Indeed, Salazar was the only suspect. Salazar was questioned at the
scene by Officer Williams, Sergeant Bruce Boardman, and Sergeant Brent McDonald, and told
the officers the names of several men and women who had been at his apartment earlier that
evening. Salazar, however, claimed to have no knowledge of Redman's murder.

 Salazar was taken to the police station for questioning. At approximately 3:30
a.m., Sergeant McDonald and Gary Cutler, a Travis County deputy sheriff, began questioning
Salazar. Salazar repeatedly told the officers that he knew nothing about the murder. The officers
were reluctant to believe Salazar, however, since he had been the only person found in the vicinity
at the time that the murder occurred.

 At approximately 10:00 a.m., McDonald began taking a written statement from
Salazar. Around 11:20 a.m., after typing about one and one-half pages, McDonald quit taking
Salazar's statement because he did not believe Salazar was telling the truth. Sometime later,
Sergeant Hector Polanco began questioning Salazar. Other officers testified that Polanco was
alone with Salazar while questioning him. (1) Salazar testified that Polanco entered the room,
introduced himself, and said that his nickname was "El Diablo," and that he was used in special
cases like this one. Although, according to Salazar, Polanco did not "verbally abuse" him,
Polanco "intimidated" him.

 At some point during the interview, Polanco began taking down a written statement
from Salazar. Polanco typed the statement on the same sheet that McDonald had begun, picking
up where McDonald had left off. According to the statement taken by Polanco, Salazar had
witnessed the entire assault. Salazar later testified that this portion of the statement was
"invented" and was pure "fiction." Salazar testified that he invented some portions of the
statement himself, while other parts were generated by suggestive questions from Sergeant
Polanco. When asked why he had given a false statement with such detail regarding things of
which he had no knowledge, Salazar explained that he hoped the police would check them out and
find them to be false. Salazar hoped that the police then would finally believe that he indeed knew
nothing about the murder. The face of the statement indicates that Salazar signed it at 2:17 p.m.,
before two witnesses.

 While Salazar was being questioned, Sergeant Boardman and Deputy Cutler were
questioning appellant and Ernest Perez in New Braunfels. Sergeant Boardman and Deputy Cutler
had left for New Braunfels at about 6:30 a.m., after receiving word that several of the persons
that Salazar named as having been at his apartment were in custody. Boardman and Cutler
obtained confessions from both appellant and Perez.

 At some point during the afternoon after the confessions were obtained, Boardman
telephoned the Austin Police Department to tell the other homicide officers that he and Cutler had
solved the case. Boardman did not remember who he talked to on the phone. After describing
the confessions, the person on the other end of the line told Boardman that a statement had been
taken from Salazar that described a different chain of events. Boardman responded that the
statement could not be correct; appellant and Perez both indicated that Salazar could not have
witnessed the murder because he was being questioned by Officer Williams when the murder
occurred. Boardman stated that he said something to the effect of, "You better take that one
back." However, Boardman testified that he did not intend his statement to be understood as an
instruction to hide the Salazar statement.

 Appellant was tried for the murder of Officer Redman. Sergeant McDonald
testified during appellant's trial that he did not have Salazar sign a written statement. Sergeant
Polanco also testified at appellant's trial, stating that he never took a written statement from
Salazar. Appellant was convicted of murder on January 8, 1992. Perez was later tried and
convicted of aggravated robbery and murder in a separate trial. (2)

 Several months after appellant's trial, Sergeant McDonald found the Salazar
statement while cleaning a file cabinet in the police station. Believing that the statement was
evidence favorable to appellant, McDonald immediately turned it over to the prosecutor, who in
turn informed the trial court and defense counsel. The written statement was stapled together with
other material. At the top of one of the pages was the handwritten notation, "Not needed,
homicide, TCSO." McDonald stated that this was his handwriting, but he did not recall writing
it. Furthermore, McDonald stated that he had no memory of having made a conscious decision
to "hide" or "get rid of" the statement.

 Both appellant and Perez filed motions for new trial, contending the Austin Police
Department had suppressed exculpatory evidence. After conducting a joint three-day hearing for
both appellant and Perez, the trial court overruled both motions for new trial. The trial court
made the following conclusions of law:



1. In the trials of defendants Jose Flores and Ernest Perez the State failed to
furnish the defense counsel with John Salazar's written statement. This failure
was not the result of prosecutorial misconduct but of the failure of the officers
who obtained Salazar's statement to reveal its existence.


2. The written statement of John Salazar differed from the testimony that he gave
at the defendants' trials and thus should be categorized as impeachment
evidence, and as such, should be considered favorable to the accused.


3. The convictions of the two defendants was (sic) based on their confessions, the
testimony of a number of eye-witnesses, expert witness testimony, and a very
graphic array of real and photographic evidence. John Salazar's testimony
was not essential to the State's case, and even if he had been impeached by his
prior inconsistent statement, this would of (sic) been of little significance. 
Having presided over both these trials, I find that the undisclosed statement of
John Salazar was not material. Even if the statement had been given to the
defense counsel there is no reasonable probability that the result would have
been different. I conclude that the evidence not revealed by the State in these
cases does not undermine my confidence in the verdicts returned in each case.



Appellant appeals his conviction and the trial court's denial of his motion for new trial, raising
three points of error.



DISCUSSION


 In appellant's first and second points of error, he contends that the trial court erred
by not granting a new trial because the state withheld exculpatory evidence--the Salazar
statement--and thereby denied appellant due process under the Fifth and Fourteenth Amendments
of the United States Constitution, and due course of law under article I, section 19 of the Texas
Constitution. We will address these points together. See Ex parte Adams, 768 S.W.2d 281, 293
(Tex. Crim. App. 1989) (stating that due process principles requiring disclosure of evidence
mandated by the Fourteenth Amendment "are equally applicable to the due course of law rights
identified in Art. I, § 19 of the Texas Constitution").

 Under the rule set forth in Brady v. Maryland, 373 U.S. 83 (1963), a prosecutor
has an affirmative duty to turn over exculpatory evidence to defense counsel. It is the character
of the evidence, not necessarily the character of the prosecutor, that dictates the fairness of a trial. 
Ex parte Adams, 768 S.W.2d at 293. Texas utilizes a three-part test to determine whether a
defendant has been deprived of a fair trial by the nondisclosure of evidence:



(1) Has there been a failure to disclose evidence?;


(2) Is that evidence favorable to the accused?; and

 

(3) Does that evidence create a probability sufficient to undermine the
confidence in the outcome of the proceeding?



Ex parte Mitchell, 853 S.W.2d 1, 4 (Tex. Crim. App.), cert denied, 114 S. Ct. 183 (1993);
Thomas v. State, 841 S.W.2d 399 (Tex. Crim. App. 1992).

 The trial court concluded that even if the Salazar statement had been given to
defense counsel, there was not a reasonable probability that the result of appellant's trial would
have been different because of the extensive evidence supporting appellant's conviction. We
agree.

 The conviction was based on appellant's confession, the testimony of several
eyewitnesses, and physical evidence. The following excerpt is from appellant's confession to his
part of the beating which resulted in the death of Officer Redman:



I ran into a white guy in the parking [lot]. I tried to talk to this guy, he kind of
like brushed me off, I grabbed him and hit him when he tried to walk away. He
tried to walk away a couple of times. I grabbed him on the shoulder, he knocked
my arm away so I hit him. He then tried to get away from me. After I hit him
three times he fell down. I picked him up, I started to hit him some more. I was
already mad because he tried to walk away from me. I had never met this man
before . . . . After he was down I kicked this man a couple of times to the head.



Appellant does not challenge the above confession as being coerced or involuntary.

 Several eyewitnesses testified at appellant's trial. Monica Lopez testified that she
saw appellant and Perez start the fight by hitting the victim in the face with their fists. She saw
the victim either fall down or pulled down, and then saw both appellant and Perez kicking the
victim, while the victim curled up and attempted to protect his face. Lopez further testified that
when Perez returned to the apartment and told everyone they had just killed a cop, she could still
see appellant outside, jumping up and down on the victim.

 Another witness, Paul Hernandez, stated that he saw appellant "just standing there
jumping up and down . . . I guess on the guy." Hernandez testified that appellant later stated,
"He's dead, I killed him." Hernandez drove appellant away from the scene; blood was left on the
car's floor mat below the seat where appellant had sat. Linda Overway testified that she also saw
appellant kicking the victim. Yet another witness, Anthony Ybarra, testified that he, too,
witnessed the beating. He testified that the victim said that he did not want any trouble when he
was confronted by appellant and Perez. Then appellant and Perez both hit the victim in the face. 
When the victim fell down on his knees, they both continued hitting him. Five minutes later,
appellant was still hitting Redman. Finally, Kristie Wilbur saw appellant and Perez hit the victim,
although the victim never fought back. Wilbur testified that appellant changed his shirt after the
beating because it was covered with blood.

 The physical evidence admitted at trial supports the eyewitness testimony. 
Appellant's shirt, pants, and boots were stained with human blood that matched the victim's blood
type. An analysis of blood splatters on appellant's pants indicated they were consistent with the
type of splatters that would be caused if someone kicked or stomped on a bloody object. 
Furthermore, the medical examiner testified that patterns imprinted on the forehead and neck of
the victim matched the pattern on the soles of appellant's boots. The medical examiner testified
that the victim died as a result of massive blunt injury to his face and upper neck from being
stomped on. The injuries to his face and neck were so severe that "it caused his death by blocking
his airway with such a massive fracturing of the tracheal bones and such a massive bleeding he
could not breath anymore. He practically asphyxiated to death."

 Given the extensive evidence supporting appellant's conviction, we cannot conclude
that the trial court erred in determining that even if defense counsel had possessed the Salazar
statement, there is not a reasonable probability that the result of the trial would have been
different. Appellant's first and second points of error are overruled. (3)

 In his third point of error, appellant contends that the trial court erred by denying
his motion for new trial because he satisfied the requirements of former Rule of Appellate
Procedure 30(b)(6), which provided that "a new trial shall be granted an accused . . . [w]here new
evidence favorable to the accused has been discovered since trial." (4) A motion for new trial is
directed to the sound discretion of the trial court, and its denial of such a motion will not be
reversed absent a clear abuse of discretion. Jones v. State, 711 S.W.2d 35 (Tex. Crim. App.
1986). The Court of Criminal Appeals has held that when a court grants a new trial based on
newly discovered evidence, the record must reflect that:



(1) the newly discovered evidence was unknown or unavailable to the movant
before trial; (2) the movant's failure to discover or obtain the evidence was not due
to a lack of diligence; (3) the new eivdence is probably true and will probably
bring about a different result in another trial; and (4) the new evidence is
admissible and not merely cumulative, corroborative, collateral, or impeaching.



Drew v. State, 743 S.W.2d 207, 226 (Tex. Crim. App. 1987); Boyett v. State, 692 S.W.2d 512,
516 (Tex. Crim. App. 1985). (5)

 Appellant has not met the above standard. As already demonstrated in this opinion,
the record contains appellant's confession, eyewitness testimony, and physical evidence, all of
which indicate that the Salazar statement would not bring about a different result in another trial. 
Furthermore, the Salazar statement constitutes impeachment evidence, and therefore is also
insufficient under the rule. Appellant's third point of error is overruled.



CONCLUSION


 Finding no error, we affirm the conviction.




 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: August 17, 1994

Do Not Publish

1.   Sergeant Hector Polanco was not called as a witness at the hearing on appellant's
motion for new trial. The trial court made a finding that had Polanco been called as a
witness, he would have invoked his right against self-incrimination and refused to answer
questions from either the State or the defense.
2.   The appeal from Perez's conviction is also before this Court in a separate cause. 
Perez v. State, No. 3-92-126-CR.
3.   Appellant also contends that the prosecutor failed to disclose to defense counsel that
Paul Hernandez had told police that the victim had uttered racial slurs prior to being
attacked by appellant and Perez. Appellant contends that had he known this, he could
have brought this out in his cross-examination of Hernandez. Appellant contends that he
would then have requested that a lesser included offense to murder be included in the
jury charge. On reviewing the record, we find that defense counsel did question
Hernandez before the jury regarding the racial slurs allegedly made by the victim. Defense
counsel could have requested a charge on a lesser included offense, but chose not to do so,
thereby waiving any error in this regard.
4.   Tex. R. App. P. 30(b)(6), 11 Tex. Reg. 743, 747-48 (1986, disapproved by the Texas
Legislature, Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 11.02, 1993 Tex. Gen. Laws
3586, 3765). The trial court's ruling on appellant's motion for new trial is governed by
the now-disapproved Rule 30(b)(6).
5.   The predecessor of Rule 30(b)(6), Tex. Code Crim. Proc. art. 40.03(6), provided in
part: "New trials, in cases of felony, shall be granted the defendant . . . [w]here new
evidence material to the defendant has been discovered since the trial." Appellant
contends that the four-part test previously applied to article 40.03 should not be applied
to Rule 30(b)(6) because the latter uses the word "favorable" rather than "material." The
Court of Criminal Appeals has not addressed this issue. One court of appeals has agreed
with appellant's construction. Meriwether v. State, 840 S.W.2d 959 (Tex. App.--Beaumont
1992, pet. ref'd). All other courts of appeals have continued to apply the four-part test. 
Burns v. State, 844 S.W.2d 934 (Tex. App.--Amarillo 1992, no pet.); Alford v. State, 807
S.W.2d 840 (Tex. App.--Waco 1991, no pet.); Dedesma v. State, 806 S.W.2d 928 (Tex.
App.--Corpus Christi 1991, pet. ref'd); Tate v. State, 762 S.W.2d 245 (Tex. App.--Houston
[1st Dist.] 1988, no pet.); Cevallos v. State, 755 S.W.2d 901 (Tex. App.--San Antonio 1988,
pet. ref'd); Balderas Cortez v. State, 735 S.W.2d 294 (Tex. App.--Dallas 1987, no pet.). We
choose to follow the courts that have applied the four-part test to Rule 30(b)(6).